Ronald Ryan
Ronald Ryan PC
Attorney for Debtors
1413 E Hedrick Dr
Tucson AZ 85719
(520)298-3333 ph 743-1020 fax
ronryanlaw@cox.net
AZ Bar #018140  Pima Cty #65325

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA TUCSON DIVISION

| | |
|---|---|
| In re: | Case No. 09-5175-TUC-EWH |
| BARRY WEISBAND | |
| Debtor/Respondent | |
| vs | **RESPONSE TO MOTION FOR RELIEF FROM STAY** |
| GMAC MORTGAGE, LLC | |
| Movant | Chapter 13 |

COMES NOW, BARRY WEISBAND, Debtor, and files this Response to Motion for Relief from Stay, filed by GMAC MORTGAGE, LLC ("GMAC"), Movant, and present unto the Court as follows:

1. This chapter 13 case was commenced by the filing of a petition on 3/19/2009. The Debtor's Plan in this case was confirmed . OR The Plan in this case has not yet been confirmed. This Court has previously ordered that the issues in this Motion for Relief from Stay be combined into the Adversary filed against Movant by Debtor.

2. Debtor generally denies that Movant is entitled to Relief from the Automatic Stay, or denies that it is appropriate in this case. For a more particular response, the specific issues that Debtor raises in this case are set forth in the second to last

1

paragraph below.

3. The vast majority of notes and deeds of trust entered into between the years 2001 and 2007 was securitized at some point. These loans are most of the time not being enforced by the true party in interest nor any party with standing to enforce the note in the form of stay relief, nor otherwise to sue or be sued on behalf of the true party in interest. Upon information and belief Movant does not have standing to enforce the note in this action, because it is not the true party in interest and/or does not enough actual authority to qualify for standing, and/or does not have actual possession of the note. See for example, *In re Kang Jin Hwang* 396 B.R. 757 (Bankr.C.D.Cal.2008); *In re Vargas*, 396 B.R. 511 (Bankr.C.D.Cal., 2008). The right to enforce a note on the noteholder's behalf does not convert the noteholder's agent into a real party in interest. *Id.* at 396 B.R. at 767, quoting 6A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1553; *In re Jacobson*, 402 B.R. 359, 366 (Bankr. W.D.Wash., 2009). The holder of the note and not the servicer or the collecting agent, must be the moving party, and the party to whom relief is granted, and must be so named in the pleadings. *Id; Kang Jin Hwang, supra; Vargas, supra.* Pursuant to FRCP 17(a) and 19(a), applicable via Rules 9014, 7017 and 7019, the true party in interest is the only party that can proceed in this action on behalf of the beneficiary of the note in question and their joinder is required. A federal court's jurisdiction is dependant upon the standing of the litigant, which includes both constitutional standing and prudential standing. *Valley Forge Christian Coll. v. Am. United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

Constitutional standing under Article III requires, at a minimum, that a

> party must have suffered some actual or threatened injury as a result of the defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision.

*Id; United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 551 (1996); *Jacobson, supra* at p. 11. Constitutional standing is a requirement of Article III of the Constitution, is a threshold jurisdictional requirement, and cannot be waived. *Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co.*, 219 F.3d 895, 899-900 (9th Cir. 2000); *Jacobson, supra* at p. 12.

> A litigant must also have "prudential standing," which stems from rules of practice limiting the exercise of federal jurisdiction to further considerations such as orderly management of the judicial system. *Pershing Park*, 219 F.3d at 899-900; *In re Godon*, 275 B.R. 555, 564-565 (Bankr. E.D. Cal. 2002) *(citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541-42 (1986).*

*Id.* Prudential standing requires that a plaintiff must assert "his own legal interests as the real party in interest," *Dunmore v. United States*, 358 F.3d 1107, 1112 (9 Cir. 2004), as found in FED. R. CIV. P. 17, which provides "[a]n action must be prosecuted in the name of the real party in interest. Furthermore, FED. R. CIV. P. 19 requires mandatory joinder of every person with an interest in the note if not doing so could lead to inconsistent results in different proceedings affecting the same subject matter. *Kang Jin Hwang, supra* at 7.

> The exclusion of these unidentified parties is particularly important in this proceeding. It is highly unlikely that FHM has kept the promissory note: most likely, it sold the note into the market for mortgage securitization.· In consequence, it is quite unlikely that MERS is an authorized agent of the holder of the note here at issue. By adding these unidentified movants, MERS is trying to obtain relief from the automatic stay for the current note holders without disclosing to the court their existence, identities or the source of MERS's authority to act on their behalf. This is improper.

*In re Vargas*, 396 B.R. 511, 516 (Bankr. C.D. Cal. 2008). And an attorney-in-fact that

merely has agency relationship for the purpose of bringing suit is only a nominal party and not the true party in interest. 6A *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* §1553 (2d ed. 1990). Foreclosure agents and servicers must prove they have authority to act for a party that has standing. *In re Scott*, 376 B.R. 285 290 (Bankr. D. Idaho 2007); *Kang Jin Hwang*, 396 B.R. at 767; *Jacobson, supra* at 12. A nominee or agent must also show that has actual authority from the true party in interest to act on its behalf and it cannot be assumed that it continues to have such authority even if granted it in the original deed of trust. See *In re Mitchell*, Memorandum Opinion, p.8, BK-S-07-16226-LBR, (Bky. D.NV. 2008). *Mitchell* was designated as the lead case for Motions to Lift Stay filed by MERS in 28 cases, listed by case number therein, in which an order for joint briefing was issued because the issues were substantially the same. Prior to oral argument MERS attempted to withdraw all but 4 of the motions. The mere fact that a party, such as MERS, is named as the beneficiary in a deed of trust is insufficient to enforce the obligation. It must truly be the beneficiary or join the true beneficiary in the action. Many documents contain statements that admit that MERS or the servicer is not the true beneficiary. They also contain contradictory statements stating that they are the beneficiary in one place and that it is only the nominee in another. Under Arizona law, the person that holds a note is the one that may enforce the note, absent one of two exceptions not pertinent here. ARS § 47-3301. In Arizona a deed of trust may be used to secure performance of an obligation, and the "beneficiary" is the person for whose benefit the deed of trust is given or their assignee. ARS § 47-33-801(1), (8).

4. An entity named as the beneficiary on a deed of trust or who has been assigned the deed of trust may not enforce it if not the holder of the note.

> 'When the note is split from the deed of trust, "the note becomes, as a practical matter, unsecured.' *RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES)* § 5.4 cmt. a (1997). A person holding only a note lacks the power to foreclose because it lacks the security, and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it. See *RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES)* § 5.4 cmt. e (1997). "Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper." 4 RICHARD R. POWELL, *POWELL ON REAL PROPERTY*, § 37.27[2] (2000).

*In re Mitchell, supra* at 8.

> If a note has been securitized into a pooling trust, the trustee may enforce the note. "If a loan has been securitized, the real party in interest is the trustee of the securitization trust, not the servicing agent. See *LaSalle Bank N.A. v. Nomura Asset Capital Corp.*, 180 F.Supp.2d 465, 469-71 (S.D.N.Y.2001) (" *LaSalle-Nomura* "); accord, *LaSalle Bank N.A. v. Lehman Bros. Holdings, Inc.*, 237 F.Supp.2d 618, 631-34 (D.Md.2002) ("*LaSalle-Lehman* ").

*Kang Jin Hwang, supra* at 766. But caution should be used here because it is important to see the document that created the Trustee relationship to the pooling trust, because often there is explicit language in said documents that limits the powers of the Trustee and thus the Trustee does not have actual authority to act on behalf of the Trust.

5. Additionally, if a power of attorney is presented to a Court that purports to grant authority from the trustee of a pooling trust to act on its behalf, the Court needs a properly offered copy of the pooling and servicing agreements, to verify that the servicing agent may proceed on behalf of Movant. Because lenders, servicers and the like hold all the evidence and have trustors at a great advantage, particularly in the context of the unbelievable complications brought into the system by securitization and the identity of the investors and noteholders is kept confidential from borrowers, even though this is contrary to statute. Therefore it is crucial that parties seeking to enforce

notes be required to produce all the evidence necessary to prove their case, and that the rules of evidence be strictly enforced.

> Additionally, if a power of attorney is presented to this Court and it refers to pooling and servicing agreements, the Court needs a properly offered copy of the pooling and servicing agreements, to determine if the servicing agent may proceed on behalf of plaintiff. (*EMC Mortg. Corp. v. Batista*, 15 Misc.3d 1143(A) [Sup Ct, Kings County 2007]; *Deutsche Bank Nat. Trust Co. v. Lewis*, 14 Misc.3d 1201(A) [Sup Ct, Suffolk County 2006]).

*HSBC Bank USA, N.A. v Valentin*, 1/30/2008, 18 Misc 3d 1123(A), 2008 NYSlipOp 50164(U), ¶ 3. Again, as the facts of these transactions are coming to light, a copy of the pooling and servicing agreements, and of the document, if separate, that sets forth the terms of the powers of the Trustee to the pool, because even the Trustee may not have the powers to act on behalf of the Trust, let alone the servicing agent for the Trustee of the pool.

6. There have been many reported instances that have brought the veracity and authenticity of documents in mortgage foreclosure cases into doubt. And there are generally gapping holes in proof of the history of ownership and assignments of the notes and in the proof of their chain of custody, that would be necessary to fairly prove the identity of the true party in interest and its connection to the party seeking to act on its behalf are so glaring, there must be compliance with the Rules of Evidence, such as those for competency of witness, personal knowledge, hearsay and authenticity, not to mention matters such as relevance of factual assertions contained in documents, and sufficiency of proof. Many of the cases cited herein strictly enforced the evidentiary rules in these cases, because various facts in the cases placed the veracity of the documentary evidence in doubt. For example, *In re Mitchell, supra* at 13-14; *In re Vargas*, 396 B.R. 511, 517 (Bankr. C.D. Cal. 2008).

> At a minimum, there must be an unambiguous representation or declaration setting forth the servicer's authority from the present holder of the note to collect on the note and enforce the deed of trust. If questioned, the servicer must be able to produce and authenticate that authority.

*Jacobson* at 18. A further development has come to light that makes even these requirements insufficient. This will be explained below in the paragraphs dealing with the *Nosek v Ameriquest et al* (Fed D Mass 2009)(Case 4:08-cv-40095-WGY), case and the issues pertaining to the original bonds that were sold to produce the actual funding for the loans. It is these bondholders that were the real investors and who are the real true party in interest, and these bondholders may not be those persons and entities that hold interests in the pooled mortgages. Therefore, it is necessary not only to obtain pooling and servicing agreements, the document that gave the Trustee of a pool whatever powers it has to act on behalf of the pool, but also a copy of the bond indenture specific to the loan being sought to be enforced, and proof of a chain of ownership of the bond leading to the pool or other person or entity seeking to enforce the note and deed of trust in a Motion for Relief from stay, or other litigation involving the note.

    7.    *Nosek v Ameriquest et al*, supra, is a District Court decision in its second trip up the appellate ladder from a Bankruptcy Court adversary proceeding. This questions raises extremely serious matters to which every mortgage company, servicer, Trustee to a pool, and all attorneys involved ought to pay real attention. It is not doubtful that Attorneys involved in enforcing mortgages are not aware of the true nature of the facts pertaining to the securitized loans they enforce. If the nature of the transactions were apparent the economy would not have been nearly destroyed by them. Securitzed loans were a brain child of Wall Street. Bonds were sold to persons

and entities to obtain ownership of shares in mortgage backed debt obligations before those debts ever came into existence. The persons purchasing the bonds were the true investors. The relationship between the bondholders and the persons that have ownership in the pool series of certificates that are claiming to be the true owners of the obligations is in doubt and likely varies widely. One scenario is that there are persons that purchased interests in these pools after the fact, and that none of that money was actually used to fund the loans, and that at least some of the funds that were tendered to purchase interests in pools never made their way to the bondholders, or initial investors. The creators of at least some of these pools were selling phantom products. These creators realized that on paper they had a colorable right to enforce the notes based on legal title through chain of possession, but not equitable title to those rights. Additionally, there may have been cases in which the pool shareholders did not even purchase their pool interest, but were simply comprized of those persons and entities that realized they had a colorable right to enforce or collect on the notes. For example, X Bank Mortgage LLC, as Trustee for Y Mortgage Loan Trust Inc, Asset Back Pass Through Certificates, Series 2006-ZMC Under the Pooling and Servicing Agreement Dated [date], without recourse, its successors and/or assigns, would be a "Trust" that Y Mortgage Loan created to provide a vehicle for holding notes and for receiving funds that would end up going into the coffers of Y Mortgage Loan, but Y Mortgage Loan was never a bond purchaser, nor a purchaser of a bondholder's interest, nor a purchaser of an interest in the pool. In either case where such a situation exists, whether it be persons or entities that purchased fictitious interests or in the case of persons or entities that never purchased these fictitious interests, but seek to enforce them for their own benefit, they do not have the equitable right to do so. Precisely speaking to the

point that the entities involved have a duty to come forward with candor as to the true nature of the interests that they come into Court to enforce, or otherwise enforce through foreclosure, is found in the holding in the recent case, *Nosek v Ameriquest et al*, *Id,* wherein these mortgage entities and their attorneys were sanctioned severely for not investigating and revealing to the Court the real nature of the interests in the notes, or their real authority to enforce them. A copy of the case is attached as it has not yet been published. Exhibit 1.

        8.      Though Movant has the burden of proof on the matters discussed above, Debtor will seek to retain the services of Neil Garfield, M.B.A., J.D., Mortgage Compliance Research and Analysis Forensic Expert, Foreclosure Defense Group ("FDG"). When retained, FDG will on Debtor's behalf, in conjunction with Debtor's Attorney, immediately file a "Qualified Written Request" (QWR) directly upon the Movant/Defendant and/or true party in interest, and send a demand letter challenging the Lender or other parties associated with the mortgage loan transaction with any "Documented Violations and Fraud Findings," that are found. Pursuant to Federal Law, as set forth in the Real Estate Settlement Procedures Act (RESPA), enforcement of the mortgage should be stayed pending complete response to the "Qualified Written Request" (QWR) by Movant/Defendant and/or the true party in interest, even in the unlikely event it can otherwise satisfy the requirements for stay relief. This is because the veracity of the documents involving securitized loans has been cast into doubt by experience within the judicial system. The QWR should serve and will serve, by virtue of a further filing by Debtor, as a substitute for some or all of the discovery permitted Debtors by the Bankruptcy Rules and the Federal Rules of Civil Procedure, namely interrogatories, requests for production and requests for admission. Though the

number of one or more of these may exceed the number presumptively considered reasonable, the fact that the federal RESPA statute deems these inquiries reasonable, is apt cause for the Court to rule that the same be answered, in the event they are challenged by Movant, or the true party interest. Other services that FDG will perform include: examination, analysis, review and representative sampling to determine if the closing procedures and documents on the subject loan(s) reveal Discrepancies, Potential Violations of Federal or State Law or Administrative Rules and/or Regulations, including but not limited to Fraud or other potential claims such as: Excessive Fees and Charges by the Broker and/or Lender, Deceptive Predatory Lending Practices, and or other Fraudulent Abusive Mortgage related issues. FDG will prepare a report to the Lender based on the documents Client(s) provide to FDG. After completing the audit FDG will prepare a Complaint Report containing the conclusions. It is likely that the true party in interest is responsible for numerous violations of State and Federal Law that could subject it to serious financial and other liabilities that exceed the face value of the note. It has often been speculated among many commentators that this is the reason true parties in interest do not appear in these cases. For if they did, it would amount to an admission that it is the holder in due course in a consumer real estate transaction, which would make it liable for the actions of all prior holders of the note and other causes of action, such as malfeasance performed by agents of the true party in interest and those of its predecessors. Debtor will then likely file an adversary proceeding alleging various causes of action, which may include a quiet title action, and /or other irregularities, making enforcement by Movant and/or the true party in interest impossible. If this is a case in which an adversary has already been filed, Debtor asks that they be granted leave to amend the Complaint when the results of the forensic

analysis have been received.

10. In this case, Movant, GMAC makes it appear that this is a simple case of GreenPoint Mortgage Funding, Inc. ("Lender" or "Greenpoint"), endorsing a note to GMAC.

> Subsequently, Lender specially indorsed the Note to Movant. As Movant is currently in rightful possession of the specially indorsed Note, Movant qualifies as the Note holder with standing to prosecute the instant Motion.

Movant's motion at ¶ 4. And that this was a simple case of Lender selling, assigning and transferring Lender's beneficial interest to GMAC.

> Subsequently, Lender's beneficial interest in the Note and Deed of Trust was sold, assigned and transferred to Movant. A true and correct copy of the Corporation Assignment of Deed of Trust evidencing the Assignment of the Note and Deed of Trust to Movant is attached hereto as exhibit C and incorporated herein by reference.

Movant's motion at ¶ 6. It is noteworthy to point out that the Note purports to have been indorsed, "Without Recourse Pay to the Order of GMAC. . ." by Thomas K. Mitchell, Vice President of Greenpoint, and is not dated, and that Sandy Broughton, Assistant Secretary with MERS, solely as nominee for Greenpoint, signed the Notarized Corporate Assignment of Deed of Trust on 5/12/2009. First, as stated in *In re Mitchell, supra* at 8 (full quotation above in ¶ 4), "When the note is split from the deed of trust, "the note becomes, as a practical matter, unsecured." Citing, *RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES)* § 5.4 cmt. a & e (1997); and 4 RICHARD R. POWELL, *POWELL ON REAL PROPERTY*, § 37.27[2] (2000). Second, it is highly unlikely that this is a simple case of an endorsement of a note from GreenPoint to GMAC. Based upon an initial report from Debtor's expert, all of GreenPoint's mortgages were securitized. It is also highly unlikely that GMAC is the holder in due

course of the note, or is the owner of the note in its own right, regardless of how clean the documents appear to make the transaction appear.  Attached hereto are several examples of Securities and Exchange Commission ("SEC") 8K reports, as well as an index of SEC corporate assignments show that the note in question is very likely to be pooled and that GMAC is not the holder of the note in its own right, nor is the owner of the note.  Exhibits 2 - 6.  Each of the 8K reports and the index show multiple examples of securitization of GMAC and/or Greenpoint mortgages.  Debtor requests that the true party in interest to established by strict and credible proof and that it be joined as a party to this proceeding, that the pooling and service agreement be produced, that the document that establishes the authorities of the Trustee of the pool be produced and that the original Bond Indenture be produced.  Without these documents, Movant cannot make its case that it has standing.

11.     Debtor will be in a much better position if the loan can be modified, and if damages potentially owed Debtor by Movant, or the true party in interest are paid to Debtor.  The home is worth much less than is owed and the interest rate ought to be brought to a reasonable rate.  This can be done voluntarily by the true party in interest at this time.  Debtor has had the property professionally appraised and the value according thereto is $275,000.00.  Debtor proposes to modify the primary mortgage.  If Movant or any other party that held the beneficial interest in the note were discoverable, why would they not agree to a proposition that would certainly give them more return than if they were to foreclose?  That is certainly a better result that complaining that they hold a "toxic asset."

WHEREFORE, PREMISES CONSIDERED, Debtor and Plaintiff asks that this Court require the true party in interest to appear as a party to this proceeding, and to

present strict proof that it is the true party in interest, or has full and sufficient authority to act on behalf of the true party in interest, as well as proof of all required elements as set forth above, with strict application of the Rules of Evidence, and based upon the extraordinary circumstances in today's economy, stay further action pending the response required by federal law to the Qualified Written Request, and that Movant's motion be denied, and granting Debtor an opportunity to file an adversary complaint when the above described information is obtained by Debtor, and for such other and further relief as is just.

Dated, June 16, 2009.

Respectfully submitted,
/S/ Ronald Ryan
Ronald Ryan, Debtor's Counsel

## CERTIFICATE OF SERVICE

I certify that on June 16, 2009, a true copy of the forgoing was emailed to: Attorneys for GMAC MORTGAGE LLC, Josephine Piranio, Pite Duncan; Chapter 13 Trustee; and Debtor.

/s/ Ronald Ryan
Ronald Ryan