**ORDERED.**

Dated: March 29, 2010



_____
**EILEEN W. HOLLOWELL**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 13 |
| BARRY WEISBAND, | Case No. 4:09-bk-05175-EWH |
| Debtor. | **MEMORANDUM DECISION** |

## I. INTRODUCTION

The debtor, Barry Weisband ("Debtor"), has challenged the standing of creditor, GMAC Mortgage, LLC ("GMAC"), to seek stay relief on his residence. After reviewing the documents provided by GMAC and conducting an evidentiary hearing, the court concludes that GMAC, the alleged servicer of the Debtor's home loan, lacks standing to seek stay relief. The reasons for this conclusion are explained in the balance of this decision.

## II. FACTUAL AND PROCEDURAL HISTORY

A. Creation of Debtor's Note And Asserted Subsequent Transfers

On or about October 6, 2006, the Debtor executed and delivered to GreenPoint Mortgage Funding, Inc. ("GreenPoint") an adjustable rate promissory note in the

principal sum of $540,000 ("Note") secured by a Deed of Trust ("DOT") on real property located at 5424 East Placita Apan, Tucson, Arizona 85718 ("Property").

On a separate piece of paper, GreenPoint endorsed the Note to GMAC ("Endorsement"). The Endorsement is undated. The DOT was signed by the Debtor on October 9, 2006, and recorded on October 13, 2006. The DOT lists GreenPoint as the lender, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary of the DOT "solely as nominee for [GreenPoint], its successors and assigns."

Approximately five months before the creation of the Note and DOT, on April 10, 2006, GreenPoint entered into a Flow Interim Servicing Agreement ("FISA") (Exhibit D)[1] with Lehman Capital, a division of Lehman Brothers Holdings, Inc. (collectively "Lehman"), pursuant to which Lehman agreed to purchase conventional, residential, fixed and adjustable rate first and second lien mortgage loans from GreenPoint. Under the FISA, GreenPoint agreed to service the mortgage loans it sold to Lehman. According to GMAC, GreenPoint transferred the Note and DOT to Lehman under the FISA.

On November 1, 2006, Lehman entered into a Mortgage Loan Sale and Assignment Agreement ("MLSAA") with Structured Asset Securities Corporation ("SASC") (Exhibit E). Under that agreement, Lehman transferred a number of the mortgage loans it acquired under the FISA to SASC. GMAC claims that the Note was one of the mortgage loans transferred to SASC. SASC created a trust to hold the transferred mortgages—GreenPoint Mortgage Funding Trust ("Trust"). The MLSAA

---

[1] Exhibits refer to the exhibits admitted into evidence at a November 10, 2009 evidentiary hearing.

2

also transferred the right to receive principal and interest payments under the transferred mortgage loans from Lehman to the Trust.

Also, on November 1, 2006, SASC entered into a Trust Agreement (Exhibit F) with Aurora Loan Services ("Aurora") as the master servicer, and U.S. Bank National Association ("U.S. Bank") as the trustee. A Reconstituted Servicing Agreement (Exhibit G) was executed the same day, which provided that GreenPoint would continue to service the mortgages transferred to the Trust under the MLSAA, but that the Trust could change servicers at any time. Also, according to GMAC, on November 1, 2006, GMAC, Lehman, and Aurora entered into a Securitization Servicing Agreement ("SSA") (Exhibit H), pursuant to which GMAC would service the loans transferred to the Trust. GMAC claims that under the SSA it is the current servicer of the Note and DOT.

Thus, according to GMAC, as of November 1, 2006, the Note and DOT had been transferred to the Trust, with SASC as the Trustor, U.S. Bank as the Trustee, Aurora as the master servicer, and GMAC as the sub-servicer. GreenPoint went out of business in 2007. According to GMAC, it remains the sub-servicer of the Note, and that is its only financial interest in the Note and DOT. (Transcript Nov. 10, 2009, pp. 44, 47, 75.)

B. Bankruptcy Events

As of March 1, 2009, the Debtor was in default of his obligations under the Note. Debtor filed his petition for relief under Chapter 13 of the Bankruptcy Code on March 19, 2009. On May 16, 2009, GMAC filed a proof of claim ("POC"), which attached the Note and DOT. The Endorsement from GreenPoint to GMAC was not attached to GMAC's proof of claim. On May 12, 2009, MERS, as nominee for GreenPoint, assigned its

3

interest in the DOT to GMAC ("MERS Assignment"). The MERS Assignment was recorded on July 16, 2009.

GMAC filed a Motion for Relief from Stay ("Motion") on May 29, 2009, on the grounds that the Debtor had no equity in the Property and the Property was not necessary for an effective reorganization. The Motion also requested adequate protection payments to protect GMAC's alleged interest in the Property. GMAC attached the Note with the Endorsement and DOT as exhibits to the Motion.

The Debtor filed a response challenging GMAC's standing to seek relief from stay. After various discovery disputes, GMAC sent a letter dated September 17, 2009, to the Debtor which purported to explain the various transfers of the Note and the DOT. (Docket #90). The letter explained that GreenPoint transferred the "subject loan" to Lehman under the FISA, that Lehman sold the "subject loan" to SASC under the MLSAA, that SASC, Aurora Loan Services, and U.S. National Bank entered into a trust agreement, which created the Trust and made Aurora the master servicer for the "subject loan," and, that GMAC was the servicer of the "subject loan" under the SSA. According to GMAC, its status as servicer, along with the Endorsement of the Note to GMAC and the assignment of the DOT from MERS to GMAC, demonstrated that it had standing to bring the Motion.

On November 10, 2009, the Court conducted an evidentiary hearing on the Motion. GMAC offered the original Note at the hearing and admitted into evidence a copy of the Note, DOT, copies of the FISA, MLSAA, Trust Agreement, the Reconstituted Servicing Agreement and the SSA. However, GMAC did not offer any documents demonstrating how the Note and DOT were conveyed by GreenPoint to the FISA. No

4

document was offered demonstrating how the Note and DOT were conveyed from the FISA to the MLSAA or from the MLSAA into the Trust. Schedule A-1 of the MLSAA, where the transferred mortgages presumably would have been listed, only has the words "Intentionally Omitted" on it, and Schedule A-2 has the word "None." (Exhibit F, pp. 19-20). Similarly, there is no evidence that the Note and DOT are subject to the SSA. Exhibit A to the SSA, titled "Mortgage Loan Schedule," is blank. At the conclusion of the hearing, this Court ordered the Debtor to begin making adequate protection payments commencing on December 1, 2009 to the Chapter 13 Trustee. The Court further ordered GMAC and the Debtor to negotiate the amount of the adequate protection payments. When the parties were unable to reach agreement, the Court set the amount of the monthly payments at $1,000.

### III. ISSUE

Does GMAC have standing to bring the Motion?

### IV. JURISDICTIONAL STATEMENT

Jurisdiction is proper under 28 U.S.C. §§ 1334(a) and 157(b)(2)(G).

### V. DISCUSSION

A. Introduction

Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay of collection and enforcement actions. 11 U.S.C. § 362(a). The purpose of the automatic stay is to provide debtors with "protection against hungry creditors" and to assure creditors that the debtor's other creditors are not "racing to various courthouses to pursue independent remedies to drain the debtor's assets." *In re Tippett*, 542 F.3d 684, 689-90 (9th Cir. 2008) (citing *Dean v. Trans World Airlines,*

*Inc.*, 72 F.3d 754, 755-56 (9th Cir. 1995)); *see also In re Johnston*, 321 B.R. 262, 273-74 (D. Ariz. 2005). Despite the broad protection the stay affords, it is not without limits. Section 362(d) allows the court, upon request of a "party in interest," to grant relief from the stay, "such as terminating, annulling, modifying, or conditioning such stay." 11 U.S.C. § 362(d)(1). The court may grant relief "for cause, including the lack of adequate protection." *Id.* The court may also grant relief from the stay with respect to specific property of the estate if the debtor lacks equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

Any party affected by the stay should be entitled to seek relief. 3 COLLIER'S ON BANKRUPTCY ¶ 362.07[2] (Henry Somers & Alan Resnick, eds. 15th ed., rev. 2009); *Matter of Brown Transp. Truckload, Inc.*, 118 B.R. 889, 893 (Bankr. N.D. Ga. 1990); *In re Vieland*, 41 B.R. 134, 138 (Bankr. N.D. Ohio 1984)). Relief from stay hearings are limited in scope—the validity of underlying claims is not litigated. *In re Johnson*, 756 F.2d 738, 740 (9th Cir. 1985). As one court has noted, "[s]tay relief hearings do not involve a full adjudication on the merits of claims, defenses or counterclaims, but simply a determination as to whether a creditor has a colorable claim." *In re Emrich*, 2009 WL 3816174, at *1 (Bankr. N.D. Cal. 2009).

Nevertheless, in order to establish a colorable claim, a movant for relief from stay bears the burden of proof that it has standing to bring the motion. *In re Wilhelm*, 407 B.R. 392, 400 (Bankr. D. Idaho 2009). The issue of standing involves both "constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Constitutional standing concerns whether the plaintiff's personal stake in the lawsuit is sufficient to have a "case or

controversy" to which the federal judicial power may extend under Article III. *Id.*; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992); *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000).

Additionally, the "prudential doctrine of standing has come to encompass several judicially self-imposed limits on the exercise of federal jurisdiction.'" *Pershing Park Villas,* 219 F.3d at 899. Such limits are the prohibition on third-party standing and the requirement that suits be maintained by the real party in interest. *See Warth v. Seldin*, 422 U.S. at 498-99; *Gilmartin v. City of Tucson*, 2006 WL 5917165, at *4 (D. Ariz. 2006). Thus, prudential standing requires the plaintiff to assert its own claims rather than the claims of another. The requirements of Fed. R. Civ. P. 17, made applicable in stay relief motions by Rule 9014, "generally falls within the prudential standing doctrine." *In re Wilhelm*, 407 B.R. at 398.

B. <u>GMAC's Standing</u>

GMAC advances three different arguments in support of its claim to be a "party in interest" with standing to seek relief from stay. First, GMAC asserts it has standing because the Note was endorsed to GMAC and GMAC has physical possession of the Note. Second, GMAC asserts that by virtue of the MERS Assignment, it is a beneficiary of the DOT and entitled to enforce and foreclose the DOT under Arizona law. Third, GMAC asserts it has standing because it is the servicer of the Note. The court addresses each of GMAC's claims in turn.

### 1. GMAC Has Not Demonstrated That It Is A Holder Of The Note

If GMAC is the holder of the Note, GMAC would be a party injured by the Debtor's failure to pay it, thereby satisfying the constitutional standing requirement. GMAC would also be the real party in interest under Fed. R. Civ. P. 17 because under ARIZ. REV. STAT. ("A.R.S.') § 47-3301, the holder of a note has the right to enforce it.[2] However, as discussed below, GMAC did not prove it is the holder of the Note.

Under Arizona law, a holder is defined as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." A.R.S. § 47-1201(B)(21)(a).[3] GMAC has failed to demonstrate that it is the holder of the Note because, while it was in possession of the Note at the evidentiary hearing, it failed to demonstrate that the Note is properly payable to GMAC. A special endorsement to GMAC was admitted into evidence with the Note. However, for the Endorsement to constitute part of the Note, it must be on "a paper affixed to the instrument." A.R.S. § 47-3204; *see also In re Nash*, 49 B.R. 254, 261 (Bankr. D. Ariz. 1985). Here, the evidence did not demonstrate that the Endorsement was affixed to the Note. The Endorsement is on a separate sheet of paper; there was no evidence that it was stapled or otherwise attached to the rest of the

---

[2] Because there is no federal commercial law which defines who is a note holder, the court must look to Arizona law to determine if GMAC is a holder. *In re Montagne*, 421 B.R. 65, 73 (Bankr. D. Vt. 2009) ("Bankruptcy law does not generally provide for the enforcement of promissory notes. As a result, the legal obligations of the parties are determined by applicable non-bankruptcy law, which is usually state law.").

[3] Arizona substantially adopted the 1972 revised version of the Uniform Commercial Code ("UCC") in 1975. *See Fin. Mgmt. Servs., Inc. v. Familian Corp.*, 183 Ariz. 497, 499 n.1 (Ct. App. 1995); *Wollenberg v. Phoenix Leasing Inc.*, 182 Ariz. 4, 7 n. 2 (Ct. App. 1994). In 1993, Arizona adopted the 1990 revision of UCC Article 3. *Fin. Mgmt. Servs., Inc.*, 183 Ariz. at 502 n.2.

8

Note. Furthermore, when GMAC filed its proof of claim, the Endorsement was not included, which is a further indication that the allonge containing the Endorsement was not affixed to the Note.[4]

In *Adams v. Madison Realty & Dev., Inc.*, 853 F.2d 163 (3d Cir. 1988), the plaintiffs executed promissory notes which, after a series of transfers, came into the defendant's possession. At issue was whether the defendant was the rightful owner of the notes. The court held that the defendant was not entitled to holder in due course status because the endorsements failed to meet the UCC's fixation requirement. *Id.* at 168-69. The court relied on UCC section 3-202(2) [A.R.S. § 47-3204]: "An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof." *Id.* at 165. Since the endorsement page, indicating that the defendant was the holder of the note, was not attached to the note, the court found that the note had not been properly negotiated. *Id.* at 166-67. Thus, ownership of the note never transferred to the defendant. Applying that principle to the facts here, GMAC did not become a holder of the Note due to the improperly affixed special endorsement.

While the bankruptcy court in *In re Nash*, 49 B.R. 254 (Bankr. D. Ariz. 1985) found that holder in due course status existed even though an allonge was not properly affixed to an instrument, the court based its determination on the clear intention that the

---

[4] The special endorsement to GMAC is also completely inconsistent with the securitization of the note into the Trust which GMAC asserts occurred shortly after it was executed by the Debtor. According to GMAC, the Note and DOT were conveyed by GreenPoint to Lehman and ultimately to a Trust. But if the Note was endorsed to GMAC, GreenPoint would not have been able to convey the Note—only GMAC as the holder of the note could have conveyed it.

9

note assignment be physically attached because: (1) the assignment was signed and notarized the same day as the trust deed; (2) the assignment specifically referenced the escrow number; (3) the assignment identified the original note holder; and (4) the assignment recited that the note was to be attached to the assignment. *Id.* at 261.

In this case, however, there is no proof that the allonge containing the special endorsement from GreenPoint to GMAC was executed at or near the time the Note was executed. Furthermore, the Endorsement does not have any identifying numbers on it, such as an account number or an escrow number, nor does it reference the Note in any way. There is simply no indication that the allonge was appropriately affixed to the Note, in contradiction with the mandates of A.R.S. § 47-3204. Thus, there is no basis in this case to depart from the general rule that an endorsement on an allonge must be affixed to the instrument to be valid.

GMAC cannot overcome the problems with the unaffixed Endorsement by its physical possession of the Note because the Note was not endorsed in blank and, even if it was, the problem of the unaffixed endorsement would remain.[5] As a result, because GMAC failed to meet its burden of demonstrating that the Endorsement was proper, it has failed to demonstrate that it is the holder of the Note.

---

[5] If the Note was endorsed in blank (and the Endorsement was properly affixed to the Note), it would be a bearer instrument and, therefore, enforceable by the party in physical possession. *See In re Hill*, 2009 WL 1956174, *2 (Bankr. D. Ariz. 2009).

10

### 2. The MERS Assignment Of The DOT Did Not Provide GMAC With Standing

GMAC argues that it has standing to bring the Motion as the assignee of MERS.[6] In this case, MERS is named in the DOT as a beneficiary, solely as the "nominee" of GreenPoint, holding only "legal title" to the interests granted to GreenPoint under the DOT. A number of cases have held that such language confers no economic benefit on MERS. *See, e.g., In re Sheridan*, 2009 WL 631355, *4 (Bankr. D. Idaho 2009); *In re Mitchell*, 2009 WL 1044368, *3-4 (Bankr. D. Nev. 2009); *In re Jacobson*, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009). As noted by the *Sheridan* court, MERS "collect[s] no money from [d]ebtors under the [n]ote, nor will it realize the value of the [p]roperty through foreclosure of the [d]eed of [t]rust in the event the [n]ote is not paid." 2009 WL 631355 at *4.

Because MERS has no financial interest in the Note, it will suffer no injury if the Note is not paid and will realize no benefit if the DOT is foreclosed. Accordingly, MERS cannot satisfy the requirements of constitutional standing. GMAC, as MERS' assignee of the DOT, "stands in the shoes" of the assignor, taking only those rights and remedies the assignor would have had. *Hunnicutt Constr., Inc. v. Stewart Title & Trust of Tucson, Trust No. 3496*, 187 Ariz. 301, 304 (Ct. App. 1996) *citing Van Waters & Rogers v. Interchange Res., Inc.*, 14 Ariz. App. 414, 417 (1971); *In re Boyajian*, 367 B.R. 138, 145

---

[6] MERS' primary function is to act as a document custodian. Major players in the mortgage lending industry created MERS to simplify the process of transferring mortgages by avoiding the need to re-record liens—and pay court recorder filing fees—each time it is assigned. Christopher L. Peterson, *Predatory Structured Finance*, 28 CARDOZO L. REV. 2185, 2266-67 (2007).

11

(9th Cir. BAP 2007). Because GMAC is MERS' assignee, it cannot satisfy the requirements of constitutional standing either.[7]

### 3. GMAC Does Not Have Standing As The Servicer Of The Note

#### (a) Servicer's Right To Collect Fees For Securitized Mortgages

Securitization of residential mortgages is "the process of aggregating a large number of notes secured by deeds of trust in what is called a mortgage pool, and then selling security interests in that pool of mortgages." Kurt Eggert, *Held Up In Due Course: Predatory Lending, Securitization, and the Holder in Due Course Doctrine*, 35 CREIGHTON L. REV. 503, 536 (2002). The process begins with a borrower negotiating with a mortgage broker for the terms of the loan. Then, the mortgage broker either originates the loan in its own name or in the name of another entity, which presumably provides the money for the loan. Almost immediately, the broker transfers the loan to the funding entity. "This lender quickly sells the loan to a different financial entity, which pools the loan together with a host of other loans in a mortgage pool." *Id.* at 538.

---

[7] The Arizona District Court has recently held that MERS, as a named beneficiary under a deed of trust, could appoint a trustee under Arizona's non-judicial foreclosure statute to conduct a foreclosure sale. *Contreras v. U.S. Bank as Trustee for CSMC Mortg. Backed Pass-Through Certificates, Series 2006-5*, 2009 WL 4827016 (D. Ariz. 2009); *Blau v. Am.'s Serv. Co.*, 2009 WL 3174823 (D. Ariz. 2009). Those cases, however, focused on whether a non-judicial foreclosure sale can be conducted under Arizona's non-judicial foreclosure statute without presentation of the original note. This court agrees that non-judicial foreclosures may be conducted under Arizona's deed of trust statute without presentation of the original note; however, that does not resolve the issue of standing in a motion for relief from stay. Furthermore, while Arizona's non-judicial foreclosure statute does not require presentation of the note, a deed of trust secures the performance of a contract under A.R.S. § 33-801(8). Therefore, a non-judicial foreclosure is conducted to enforce the rights of the contract holder and, the party conducting such a sale is presumably either the holder of the contract or the holder's agent.

12

The assignee then transfers the mortgages in the pool to another entity, which in turn transfers the loans to a special purpose vehicle ("SPV",) whose sole role is to hold the pool of mortgages. *Id.* at 539. "The transfer to the special purpose trust must constitute a true sale, so that the party transferring the assets reduces its potential liability on the loans and exchanges the fairly illiquid loans for much more liquid cash." *Id.* at 542. Next, the SPV issues securities which the assignee sells to investors. *Id.* at 539.

Once the securities have been sold, the SPV is not actively involved. It "does not directly collect payments from the homeowners whose notes and deeds of trust are held by the SPV." *Id.* at 544. Rather, servicers collect the principal and interest payments on behalf of the SPV. *Id.* Fees are associated with the servicing of loans in the pool. Therefore, GMAC would have constitutional standing if it is the servicer for the Note and DOT because it would suffer concrete injury by not being able to collect its servicing fees.[8] *In re O'Kelley*, 420 B.R. 18, 23 (D. Haw. 2009). In this case, however, the evidence does not demonstrate that the Note and DOT were transferred to the Trust, and, without that evidence, there is no demonstration that GMAC is the servicer of the Note.

---

[8] Even if a servicer has constitutional standing, it may still not be the "real party in interest" under Fed. R. Civ. P. 17 and may not, therefore, be able to satisfy the requirements for prudential standing. *See, e.g., In re Jacobson, 402 B.R. 359, 365-66* (Bankr. W.D. Wash. 2009)*; In re Hwang,* 396 B.R. 757, 767 (Bankr. C.D. Cal. 2008).

13

### (b) There Is Insufficient Evidence That The Note Was Sold To Lehman And Became Part Of The Trust

When the Debtor executed the Note and DOT, GreenPoint was the original holder of the Note and the economic beneficiary of the DOT. GreenPoint, allegedly, transferred the Note to Lehman pursuant to the FISA. However, the term "mortgage loans" is not defined in the FISA and GMAC's documents regarding the securitization of the Note and DOT provide no evidence of actual transfers of the Note and DOT to either the FISA or the Trust. Because such transfers must be "true sales," they must be properly documented to be effective. Thus, to use an overused term, GMAC has failed "to connect the dots" to demonstrate that the Note and DOT were securitized. Accordingly, it is immaterial that GMAC is the servicer for the Trust.

### C. Debtor's Other Arguments

#### 1. Securities Investors Are Not The Only Individuals Who Can Satisfy Standing Requirements When Dealing With A 362 Motion on a "Securitized" Mortgage

The Debtor argues that, in an asset securitization scheme, only the securities investors have standing to seek stay relief because they are the only parties with a financial interest in the securitized notes. However, because the Debtor executed the Note and received consideration (which he used to purchase the house), the contract is enforceable regardless of who provided the funding. In other words, the fact that the funds for a borrower's loan are supplied by someone other than the loan originator, does not invalidate the loan or restrict enforcement of the loan contract to the parties who funded the loan. A number of cases and treatises recognize that consideration for a contract, including a promissory note, can be provided by a third party. *See, e.g.*,

*DCM Ltd. P'ship v. Wang*, 555 F. Supp. 2d 808, 817 (E.D. Mich. 2008); *Buffalo County v. Richards*, 212 Neb. 826, 828-29 (Neb. 1982); 3 WILLISTON ON CONTRACTS § 7:20 (Richard A. Lord, 4th ed. 2009); RESTATEMENT (SECOND) OF CONTRACTS § 71(4) (2009).

Notes are regularly assigned and the assignment does not change the nature of the contract. The assignee merely steps into the shoes of the assignor. *In re Boyajian*, 367 B.R. 138, 145 (9th Cir. BAP 2007); *In re Trejos*, 374 B.R. 210, 215 (9th Cir. BAP 2007). No additional consideration is required, as opposed to a novation which creates a new obligation. *Id.* at 216-17 *citing* RESTATEMENT (SECOND) OF CONTRACTS § 280, cmt. e. Therefore, the Debtor's argument that the Note is unenforceable because the funder of the Note was not the payee fails. The Note is still valid and can be enforced by the party who has the right to enforce it under applicable Arizona law.

### 2. Proof Of A Note's Entire Chain Of Ownership Is Not Necessary For Stay Relief

A movant for stay relief need only present evidence sufficient to present a colorable claim—not every piece of evidence that would be required to prove the right to foreclose under a state law judicial foreclosure proceeding is necessary. *In re Emrich*, 2009 WL 3816174, at *1 (Bankr. N.D. Cal. 2009). Accordingly, not every movant for relief from stay has to provide a complete chain of a note's assignment to obtain relief.

Arizona's deed of trust statute does not require a beneficiary of a deed of trust to produce the underlying note (or its chain of assignment) in order to conduct a Trustee's Sale. *Blau v. Am.'s Serv. Co.*, 2009 WL 3174823, at *6 (D. Ariz. 2009);

*Mansour v. Cal-W. Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009); *Diessner v. Mortg. Elec. Registration Sys.*, 618 F. Supp. 2d 1184, 1187 (D. Ariz. 2009). It would make no sense to require a creditor to demonstrate more to obtain stay relief than it needs to demonstrate under state law to conduct a judicial or non-judicial foreclosure. Moreover, if a note is endorsed in blank, it is enforceable as a bearer instrument. *See In re Hill*, 2009 WL 1956174, at *2 (Bankr. D. Ariz. 2009). Therefore, this Court declines to impose a blanket requirement that all movants must offer proof of a note's entire chain of assignments to have standing to seek relief although there may be circumstances where, in order to establish standing, the movant will have to do so.

### 3. The Movant Has Not Violated Rule 9011

The Debtor argues that GMAC "violated Rule 7011" by presenting insufficient and misleading evidence. Given that there is no Rule 7011, the Court assumes that the Debtor was actually referring to Bankruptcy Rule 9011. Rule 9011 allows a court to impose sanctions for filing a frivolous suit. FED. R. BANKR. P. 9011(c); *see also* FED. R. CIV. P. 11(c). As noted at the evidentiary hearing, the Court did not find that GMAC filed its motion for relief stay in bad faith, nor does this Court believe GMAC filed its motion thinking it did not have proper evidentiary support. There are numerous, often conflicting, decisions on the issues of "real party in interest" and constitutional standing, and what evidence must be presented by a servicer seeking stay relief. The record in this case does not support imposition of 9011 sanctions.

16

## VI. CONCLUSION

GMAC has not demonstrated that it has constitutional or prudential standing or is the real party in interest entitled to prosecute a motion for relief from stay.

Accordingly, its motion is DENIED without prejudice.

Dated and signed above.

Notice to be sent through the
Bankruptcy Noticing Center "BNC"
to the following:

Barry Weisband
5424 East Placita Apan
Tucson, AZ  85718

Ronald Ryan
Ronald Ryan, P.C.
1413 E. Hedrick Dr.
Tucson, AZ 85719
Attorney for Debtor

Dianne C. Kerns
Chapter 13 Trustee
7320 North La Cholla #154 PMB 413
Tucson, AZ  85741-2305

GMAC Mortgage
c/o Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA  82177-7921

Yaron Shaham
Wolf & Wyman, LLP
5 Park Plaza, Suite 1100
Irvine, CA  92614-5979

GMAC Mortgage, LLC
3451 Hammond Ave.
Waterloo, IA  50702-5300

17

GMAC Mortgage - Central Mortgage Co.
Atten: Bankruptcy Department
1100 Virginia Drive
Fort Washington, PA  19034-3204

Office of the U.S. Trustee
230 North First Ave., Suite 204
Phoenix, AZ  85003